## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT WILHELM, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| BLACK KNIGHT, INC., ANTHONY JABBOUR, CATHERINE L. BURKE, THOMAS M. HAGERTY, DAVID K. HUNT, JOSEPH M. OTTING, GANESH B. RAO, JOHN D. ROOD, and NANCY L. SHANIK, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Robert Wilhelm ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Black Knight, Inc. ("Black Knight" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Intercontinental Exchange, Inc. ("ICE") (the "Proposed Transaction").

2.      On May 4, 2022, the Company entered into an Agreement and Plan of Merger with ICE and its wholly owned subsidiary Sand Merger Sub Corporation (the "Merger Agreement").

(the "Merger Agreement"). The Merger Agreement provides that Black Knight's stockholders will receive a mix of cash and stock worth $85 for each share of Company stock they own.[1]

3.      The Company's corporate directors subsequently authorized the August 19, 2022 filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Black Knight stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to

---

[1] The mix of aggregate consideration will consist of eighty percent cash and twenty percent stock.

[2] The Special Meeting at which stockholders will be asked to approve the Proposed Transaction currently is scheduled for September 21, 2022.

Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9.     Plaintiff is, and has been at all times relevant hereto, the owner of Black Knight common stock.

10.     Defendant Black Knight is a Delaware corporation with its principal executive offices located at 601 Riverside Avenue, Jacksonville, Florida 32204.  Black Knight's shares trade on the New York Stock Exchange under the ticker symbol "BKI."  Founded in 2013, Black Knight provides integrated software, data, and analytics solutions in North America and Internationally. The Company operates through two segments: (a) Software Solutions; and (b) Data and Analytics.

11.     Defendant Anthony Jabbour is and has been Executive Chairman of the Board and a director of the Company at all times relevant hereto.

12.     Defendant Catherine L. Burke is and has been a director of the Company at all times relevant hereto.

13.     Defendant Thomas M. Hagerty is and has been a director of the Company at all times relevant hereto.

14.    Defendant David K. Hunt is and has been a director of the Company at all times relevant hereto.

15.    Defendant Joseph M. Otting is and has been a director of the Company at all times relevant hereto.

16.    Defendant Ganesh B. Rao is and has been a director of the Company at all times relevant hereto.

17.    Defendant John D. Rood is and has been a director of the Company at all times relevant hereto.

18.    Defendant Nancy L. Shanik is and has been a director of the Company at all times relevant hereto.

19.    Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

20.    On May 4, 2022, Black Knight and ICE jointly announced in relevant part:

**ATLANTA, NEW YORK & JACKSONVILLE** – May 4, 2022 – Intercontinental Exchange, Inc. (NYSE: ICE), a leading global provider of data, technology, and market infrastructure, today announced it has entered into a definitive agreement to acquire Black Knight, Inc. (NYSE: BKI), a software, data and analytics company that serves the housing finance continuum, including real estate data, mortgage lending and servicing, as well as the secondary markets. The cash and stock transaction values Black Knight at $85 per share, or a market value of $13.1 billion, and builds on ICE's position as a provider of end-to-end electronic workflow solutions for the rapidly evolving U.S. residential mortgage industry.

The definitive agreement has been unanimously approved by the Boards of Directors of both companies.

Black Knight, based in Jacksonville, Florida, has approximately 6,500 employees and is a long-time driver of innovation in the mortgage industry. The company provides a comprehensive and integrated ecosystem of software, data, and analytics solutions serving the real estate and housing finance markets. The Black Knight ecosystem adds value for clients of all sizes across the mortgage and real estate lifecycles by helping organizations lower costs, increase efficiencies, grow their businesses, and reduce risk.

The addition of Black Knight's technology solutions, real estate and mortgage-related data assets, leading analytics, and its team of mortgage and technology professionals complements and strengthens ICE's rapidly growing mortgage technology business. The combination will result in improvements in the mortgage lending process for borrowers and lenders by increasing automation and efficiencies that lower the cost of obtaining a mortgage, while harnessing data that can help current homeowners lower their monthly payments and lessen the likelihood of default.

"Since our founding in 2000, ICE's simple mission has been to make analog and opaque financial transactions more digital and transparent, beginning with commodity markets, extending across a large array of asset classes, and most recently working to help streamline the mortgage industry," said Jeffrey C. Sprecher, Founder, Chair and CEO of Intercontinental Exchange. "Black Knight shares our passion for leveraging technology to serve customers and households, and, with our expertise in operating networks and marketplaces, our planned acquisition will bring to life a true end-to-end solution for the mortgage manufacturing and servicing ecosystem, benefitting aspiring and current homeowners across the United States."

"Black Knight has been on a successful journey to transform the mortgage industry by providing our clients with powerful, interconnected solutions that help them achieve greater efficiency and better serve their customers," said Anthony M. Jabbour, Chairman and CEO of Black Knight, Inc.  "We believe this combination is the right next step in that journey.  Black Knight and ICE share a common vision and commitment to deliver a better experience for our clients and the stakeholders we serve, and to ultimately streamline the homeownership process.  By combining our expertise, we can deliver significant benefits to our clients and consumers by improving and streamlining the process of finding a home, as well as obtaining and managing a mortgage."

"This transaction will benefit ICE, Black Knight, and our collective shareholders," said Warren Gardiner, Chief Financial Officer of Intercontinental Exchange. "Black Knight's high-growth, recurring revenue stream will further complement our "all weather" business model, while the strength of ICE's balance sheet, and our combined cash flows, position this transaction to be accretive to adjusted earnings per share[1] in the first full year."

The transaction is expected to close in the first half of 2023, following the receipt of regulatory approvals, Black Knight stockholder approval, and the satisfaction of customary closing conditions.

**Key Financial Metrics:**

- Transaction valued at $85 per share, or a total market value of $13.1 billion, with consideration in the form of a mix of cash (80%) and stock (20%).
  - Cash consideration of $10.5 billion expected to be funded with newly issued debt and cash on hand at the time of close.
  - Stock consideration valued at approximately $2.6 billon based on ICE 10-day VWAP as of May 2, 2022 of $118.09.
- Black Knight shareholders can elect to receive either cash or stock, subject to proration, with the value of the cash election and the stock election equalized at closing.
- Enterprise value of approximately $16 billion represents ~15x fully synergized 2022 Black Knight adjusted EBITDA[2].
- Expect to realize cost synergies of $200 million, with one-third realized by year one, two-thirds by year three, and full synergies realized by year five.
- Expect to realize revenue synergies, net of related costs, of approximately $125 million by year five.
- Expected Black Knight transaction IRR of 10%
- Expect that the acquisition of Black Knight will be accretive to adjusted EPS[1] in the first full year post-close.

- Transaction expected to close in the first half of 2023, subject to satisfaction of customary conditions including receipt of Black Knight stockholder approval and Hart-Scott-Rodino (HSR) review and clearance.

Goldman Sachs and Co., LLC and Wells Fargo Securities, LLC are serving as lead financial advisors to Intercontinental Exchange, and Shearman & Sterling LLP and Morgan Lewis & Bockius LLP are serving as legal advisors to Intercontinental Exchange. J.P. Morgan Securities LLC is serving as the exclusive financial advisor to Black Knight and Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Black Knight.

[1]Adjusted earnings per share (EPS) excludes amortization of acquisition-related intangibles, acquisition and integration expenses and the impact of equity earnings from unconsolidated investees, net of tax.

[2]2022 adjusted EBITDA represents the midpoint of Black Knight's FY22 adjusted EBITDA guidance range of $786 million to $803 million, burdened for stock-based compensation and adjusted for full synergies of $325 million.

## **The Materially Incomplete and Misleading Proxy Statement**

21.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on August 9, 2022.  The Proxy Statement, which recommends that Black Knight stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for the Company and ICE, and the financial analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"); and (b) the background of the Proposed Transaction.

### *Material Misrepresentations and/or Omissions Concerning Financial Forecasts for Black Knight and ICE*

22.     The Proxy Statement fails to disclose material information concerning the financial forecasts for Black Knight and ICE, including the line items underlying the calculation of Adjusted EBITDA and Adjusted EPS with respect to the Company's financial projections.  The Proxy Statement further fails to disclose key timing issues regarding Black Knight's management

projections, including when such projections were first created, finalized, and approved for use by J.P. Morgan.

23.     The Proxy Statement similarly fails to disclose the unlevered free cash flows the Company Black Knight is forecasted to generate during fiscal years 2022E through 2026E, as well as the terminal unlevered free cash flows J.P. Morgan utilized in connection with its *Discounted Cash Flow Analysis.* The Proxy Statement further fails to define "unlevered free cash flow" as utilized by J.P. Morgan, nor does it disclose the line items underlying those forecasts.

24.     The Proxy Statement also fails to disclose a summary of any financial projections for ICE that were reviewed or relied upon by Black Knight management, the Board, or J.P. Morgan in connection with the Proposed Transaction.

***Material Misrepresentations and/or Omissions Concerning J.P. Morgan' Financial Analyses***

25.     The Proxy Statement fails to disclose material information concerning J.P. Morgan's financial analyses.

26.     With respect to the *Discounted Cash Flow Analysis* performed by J.P. Morgan, the Proxy Statement fails to disclose (a) the inputs and assumptions underlying the range of discount rates utilized by J.P. Morgan in connection with the analysis; (b) the Company's terminal values; and (c) net debt and other adjustments for Black Knight as of December 31, 2021.

27.     With respect to the *Public Trading Multiples* analysis performed by J.P. Morgan, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by the financial advisor.

***Material Misrepresentations and/or Omissions Concerning the Background of the Proposed Transaction***

28.     The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction, including the terms of the confidentiality agreements

("NDAs") the Company entered into with parties during the process leading up to the Proposed Transaction, including whether any of the NDAs contain a "don't-ask, don't-waive" standstill provision that is still in effect and presently precluding a party submitting a topping bid for the Company.

29.     In sum, the omission of the above-referenced information renders statements in the "Certain Unaudited Prospective Financial Information," "Opinion of Black Knight's Financial Advisor," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Black Knight will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Black Knight**

30.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Black Knight is liable as the issuer of these statements.

32.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39.     The Individual Defendants acted as controlling persons of Black Knight within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Black.  Knight and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

42.    By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Mandiant, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate

the material information identified above to Company stockholders;

    B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

    D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  August 31, 2022

**LONG LAW, LLC**

By  */s/ Brian D. Long*
  Brian D. Long (#4347)
  3828 Kennett Pike, Suite 208
  Wilmington, DE 19807
  Telephone: (302) 729-9100
  Email: BDLong@longlawde.com

  *Attorneys for Plaintiff*